

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7781 | **DATE** | 4/4/2003 |
| **CASE TITLE** | Deluca vs. Liggett & Myers | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, defendants' motion for summary judgment (88-1, 116-1) are granted. DeLuca's motion to strike the affidavits of two defense witnesses (126-1) is denied as moot because the Court did not rely on these affidavits in reaching its conclusions. All remaining motions are terminated (106-1, 114-1, 115-10. Judgment is entered in favor of the defendants. The trial date of 5/5/03 and the pretrial conference dates are vacated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | APR 0 7 2003 | |
| ✓ | Docketing to mail notices. | date docketed | 142 |
| | Mail AO 450 form. | docketing deputy initials KL | |
| | Copy to judge/magistrate judge. | | |
| OR | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARIA DELUCA, Independent Administrator )
of the Estate of JOSEPH DELUCA, )
)
Plaintiff, )
)
vs. ) Case No. 00 C 7781
)
LIGGETT & MYERS, INC., )
PHILIP MORRIS USA, INC., )
R.J. REYNOLDS TOBACCO CO., and )
LORILLARD TOBACCO CO., )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Maria DeLuca, the administrator of the estate of her late husband, Joseph DeLuca,

maintains this suit pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1, and Illinois'

survival statute, 755 ILCS 5/27-6. Her amended complaint asserts claims of negligence and strict

products liability based on defendants' manufacture and sale of cigarettes that, plaintiff alleges,

caused the illness and death of Joseph DeLuca. Defendants have moved for summary judgment.

For the reasons stated below, the Court grants defendants' motions.

### BACKGROUND

Joseph DeLuca was diagnosed with terminal lung cancer in June 2000; he died six

months later in December at the age of seventy. Mr. DeLuca smoked cigarettes for most of his

life; he began smoking in his native Italy around 1946, when he was sixteen years old. Around

1965, Joseph moved to Canada, where he resided for approximately two years. In 1967, he

142

relocated again, this time to the United States. At the time of his diagnosis, he was smoking about four packs of cigarettes a day. Joseph stopped smoking for a six-month period in 1976 and for shorter periods on other occasions.

On November 29, 2000, he filed this lawsuit against defendants Liggett & Myers, Inc., Philip Morris USA, Inc., R.J. Reynolds Tobacco Co., and Lorillard Tobacco Co., alleging that he developed lung cancer as a result of smoking cigarettes manufactured and sold by them. Sadly, Mr. DeLuca did not live to see the outcome of this suit; he passed away two days before he was scheduled to give a video-taped evidence deposition to preserve his testimony. Upon her husband's death, Maria DeLuca, the administrator of Joseph's estate, replaced him as the plaintiff in this case and filed an amended complaint. We will refer to the plaintiff as "DeLuca" except where necessary to distinguish between Mr. and Mrs. DeLuca.

## DISCUSSION

Summary judgment is proper only if the affidavits and other evidentiary materials submitted by the parties show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, the nonmovant's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Supreme Court has stated that Rule 56(c) mandates the entry of summary judgment when, "after adequate time for discovery," the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). Even when certain facts are genuinely disputed, a "complete failure of proof concerning an essential

2

element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

DeLuca alleges that defendants were negligent in the following ways: (1) by failing to warn or notify consumers of cigarettes' dangerous effects and addictive quality; (2) by manipulating the nicotine levels in cigarettes to ensure that consumers would remain addicted; (3) by misrepresenting to consumers, through false advertisements, that cigarettes are actually reasonably safe; and (4) by putting into the stream of commerce an unreasonably dangerous product. DeLuca's strict liability claims allege that defendants manufactured and sold unreasonably dangerous products in that they contained a design defect and did not contain a warning as to the dangerousness and addictive quality of cigarettes.

A.    **Claims Based on a Failure to Warn**

Defendants argue that DeLuca's claims that relate to the adequacy of the warnings and disclosures on their cigarette packages are preempted by the Federal Cigarette Labeling and Advertising Act (Labeling Act), 15 U.S.C. §§ 1331-41, as amended by the Public Health Cigarette Smoking Act of 1969, Pub. L. No. 91-222, 84 Stat. 87. The Labeling Act represents a "comprehensive federal scheme governing the advertising and promotion of cigarettes." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001). Section 1331 lays out the Labeling Act's purpose:

> It is the policy of the Congress, and the purpose of this chapter, to establish a comprehensive Federal program to deal with cigarette labeling and advertising with respect to any relationship between smoking and health, whereby –
>
>> (1) the public may be adequately informed about any adverse health effects of cigarette smoking by inclusion of warning notices on each package of cigarettes and in each advertisement of cigarettes; and
>>
>> (2) commerce and the national economy may be (A) protected to the

3

maximum extent consistent with this declared policy and (B) not impeded by diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between smoking and health.

15 U.S.C. § 1331. The Labeling Act accomplishes the twin goals of informing consumers of the

health risks of smoking and protecting the national economy by requiring specific warnings on

cigarette packages and advertisements, *see id.* § 1333, and by prohibiting states from imposing

their own warning regulations on cigarette manufacturers. *Lorillard*, 533 U.S. at 542-43. The

Labeling Act's preemption provision provides:

(a) Additional statements

No statement relating to smoking and health, other than statement required by section 1333 of this title, shall be required on any cigarette package.

(b) State regulations

No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.

*Id.* § 1334. This preemption provision "unequivocally precludes the requirement of any

additional statements on cigarette packages beyond those provided" by the Act. *Lorillard*, 533

U.S. at 542. It also expressly precludes states from "imposing any requirement or prohibition

based on smoking and health with respect to the advertising and promotion of cigarettes." *Id.*

In *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992), the Supreme Court stated that

to determine whether the Labeling Act preempts a common law claim, "we ask whether the legal

duty that is the predicate of the common-law damages action constitutes a 'requirement or

prohibition based on smoking and health . . . imposed under State law with respect to . . .

advertising or promotion,' giving that clause a fair but narrow reading." *Id.* at 524 (plurality

4

opinion) (quoting § 1334) (alterations in original). The Court also instructed that each of the plaintiff's common law claims must be examined individually to determine whether it is in fact preempted. Insofar as DeLuca's claims "require a showing that [defendants'] post-1969 advertising or promotions should have included additional, or more clearly stated, warnings, those claims are pre-empted." *Id.*

In the amended complaint, DeLuca alleges that defendants "failed to notify" consumers of cigarettes' dangerous effects and addictive qualities and that defendants manufactured and sold cigarettes "without adequate warning" to this effect. She does not allege that the packages containing the cigarettes Joseph smoked after 1969 omitted the federally mandated warnings specified in Section 1333 of the Act. Thus DeLuca's claims are undeniably predicated on an alleged obligation to warn of the health risks associated with smoking above and beyond that imposed by the Labeling Act. The imposition of such obligations is precisely what the Act's preemption provision precludes; it is only by way of packaging or other promotional materials that defendants communicate directly with the public generally, and purchasers of cigarettes in particular. *Cf. Miles v. S.C. Johnson & Son, Inc.*, No. 00 C 3278, 2002 WL 31655188, at *7 (N.D. Ill. Nov. 25, 2002) (observing that the only way manufacturers of a cleaning substance could instruct or warn consumers was "by printing the information on the container or in accompanying literature"). DeLuca's negligence and strict products liability claims based on a failure to warn and a failure to notify are therefore preempted.

DeLuca attempts to breath life into these claims by stating that they are actually predicated on theories of fraudulent concealment and fraudulent misrepresentation. Even if, however, we analyze her claims accordingly, they are preempted, with the exception of her pre-

1969 claims against Liggett & Myers.

The Court concludes that the Labeling Act preempts DeLuca's claim of fraudulent concealment to the extent it is based on defendants' failure to reveal the full extent of cigarettes' harmful effects. *Cipollone,* though not a model of clarity in this respect, bars a fraudulent concealment claim of this type. No opinion in *Cipollone* garnered a majority on the question of how preemption applied to specific types of claims. Justice Stevens' plurality opinion was joined by three other justices. Justice Blackmun's concurring / dissenting opinion, joined by two other justices, concluded that the Labeling Act did not preempt *any* of the plaintiff's claims. *Cipollone,* 505 U.S. at 531-44 (Blackmun, J., concurring in part and dissenting in part). Justice Scalia's concurring / dissenting opinion, joined by one other justice, concluded that the Labeling Act preempted *all* of the plaintiff's claims. *Id.* at 544-56 (Scalia, J., concurring in the judgment in part and dissenting in part). Though, as an original matter, the authoritativeness of Justice Stevens' plurality opinion is not entirely clear, courts have generally treated it as binding in its entirety. *See, e.g., Allgood v. R.J. Reynolds Tobacco Co.,* 80 F.3d 168, 171 (5th Cir. 1996); *Michael v. Shiley, Inc.,* 46 F.3d 1316, 1322 n.3 (3d Cir. 1995); *Lacey v. Lorillard Tobacco Co.,* 956 F. Supp. 956, 961 (N.D. Ala. 1997). We will do the same.

Justice Stevens' plurality opinion addressed, among other things, a claim alleging both affirmative misrepresentations and concealment of material facts. *Cipollone,* 505 U.S. at 528. The plurality concluded that because the Labeling Act preempts "only the imposition of state-law obligations 'with respect to the advertising or promotion of cigarettes,'" the plaintiff's claims that the defendants "concealed material facts are therefore not pre-empted insofar as those claims rely on a state-law duty to disclose such facts through channels of communication other than

6

advertising or promotion. Thus, for example, if state law obliged [defendants] to disclose material facts about smoking and health to an administrative agency, [the Labeling Act] would not pre-empt a state-law claim based on failure to fulfill that obligation." *Id.* The plurality also concluded that the plaintiff's claims of affirmative misrepresentation were not preempted even though they concerned advertising and promotion, because these claims "are predicated not on a duty 'based on smoking and health' but rather on a more general obligation – the duty not to deceive." *Id.* at 528-29.

The plurality's distinction between concealment and affirmative fraud is not entirely satisfactory. The common law has long regarded active concealment of material facts as the equivalent of a false representation:

> [I]f, with intent to deceive, either party to a contract of sale conceals or suppresses a material fact which he is in good faith bound to disclose, this is evidence of and equivalent to a false representation, because the concealment or suppression is, in effect, a representation that what is disclosed is the whole truth. The gist of the action is fraudulently producing a false impression upon the mind of the other party; and, if this result is accomplished, it is unimportant whether the means of accomplishing it are words or acts of the defendant, or his concealment or suppression of material facts not equally within the knowledge or reach of the plaintiff.

*Stewart v. Wyoming Cattle Ranche Co.,* 128 U.S. 383, 388 (1888). But whether or not the distinction is satisfactory, this Court cannot ignore it. Thus our determination whether DeLuca's so-called "fraudulent concealment" claim is preempted turns on whether the claim depends on a duty to disclose that exists independent of the channels of sales, marketing, and promotion of cigarettes. *See Lacey,* 956 F. Supp. at 961; *cf. Allgood,* 80 F.3d at 171 (stating simply that claims of fraudulent concealment are preempted). DeLuca has not identified any particular aspect of her claim (aside from one which we will address shortly) that falls outside the preempted category.

7

For this reason, her claim of fraudulent concealment is preempted to the extent it is based on defendants' failure to reveal the full extent of cigarettes' harmful effects. The Labeling Act "specifically enumerates what information must be provided by tobacco companies. . . . If plaintiff were to prevail on [a] suppression claim, he would be imposing a de facto labeling requirement on the defendants." *Lacey*, 956 F. Supp. at 962; *accord Algood*, 80 F.3d at 171.

Under *Cipollone*, claims of fraudulent misrepresentation with respect to advertising and promotion are not preempted by the Labeling Act because they are not predicated on a duty "based on smoking and health" but rather on "a more general obligation – the duty not to deceive." *Cipollone*, 505 U.S. at 528-29 (plurality opinion). To prove a claim of fraudulent misrepresentation, a plaintiff must establish, among other things, that the defendant made a false statement of material fact and that the plaintiff relied on the statement. *Quinn v. McGraw-Hill Cos., Inc.*, 168 F.3d 331, 335 (7th Cir. 1999). DeLuca's brief identifies only two alleged misrepresentations – a statement issued by defendants, which appeared in newspapers throughout the United States in 1954, entitled "A Frank Statement to Cigarette Smokers," and statements made by defendants' CEOs at a 1994 hearing held by the House Subcommittee on Health and the Environment. In the inaptly named Frank Statement, defendants expressed their belief that cigarettes are not harmful to health and denied that there was evidence linking smoking to cancer. In the 1994 hearings, defendants' CEOs testified that they did not believe nicotine was addictive.

The Court has no hesitation in saying that a jury could find these statements were deceptive. Mrs. DeLuca's problem, however, is that she cannot establish that Joseph began or continued smoking in reliance on these alleged misrepresentations. There is no evidence that Joseph, who in 1954 still lived in Italy, saw or much less relied on the "Frank Statement." There

8

is also no evidence that he was aware of the 1994 testimony, let alone that it affected his actions in any way. And even if DeLuca could establish that Joseph relied on the CEOs' testimony and that this caused or contributed to his injury, given the state of common awareness in 1994 about the risks of smoking and addictiveness of cigarettes, his reliance would not have been reasonable. *Cf. FDA*, 529 U.S. at 138 (stating that in 1965 "the adverse health consequences of tobacco use were well known," and citing various government reports from the 1980s on the dangers and addictiveness of smoking); *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 602 (7th Cir. 2000) (referring to the Surgeon General's 1988 report declaring smoking addictive); *Gilboy v. Am. Tobacco Co.*, 582 So. 2d 1263, 1265 (La. 1991) (stating in 1991 that the "precise dangers [of smoking] have been widely disseminated" in recent years).

DeLuca also claims that defendants manipulated the nicotine levels in cigarettes so that consumers would remain addicted to their products. The first question is whether this claim is one of fraudulent concealment, which is likely preempted under *Cipollone*, or rather of affirmative deceit, which *Cipollone* does not bar. The Seventh Circuit's opinion in *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039 (7th Cir. 1999), discussed a similar claim, characterizing it as a claim of fraud or deceit and stating that as such it "might well be preempted." *Id.* at 1042. Stated that way, the statement is a *non sequitur;* the *Cipollone* plurality specifically found that fraudulent misrepresentation claims are not preempted even if they directly concern advertising, and the three concurring justices believed that *no* claims are preempted by the Labeling Act. Thus if DeLuca's nicotine-manipulation claim is actually a claim of affirmative deceit, it can proceed. But upon closer inspection, it appears that the court in *Kirksey* actually understood the claim to be one of concealment, not affirmative fraud,

9

specifically a claim regarding the failure to disclose the true extent of the product's addictive nature. *Id.* Though *Kirksey*'s discussion of a fraudulent concealment claim based on manipulation of nicotine to make cigarettes addictive is *dictum*, this Court cannot overlook it: it provides a clear indication of how the Seventh Circuit would view such a claim. And in any event, we think that *Kirksey* reads *Cipollone* correctly. The "nicotine manipulation" claim, at its core, is either a claim of concealment of what the manufacturer was doing, or it is a claim of unreasonable dangerousness (we deal with the latter possibility in the next section of this opinion). As a claim of concealment, it is necessarily based on a failure to disclose the product's true addictive quality via the channels of marketing and promotion. As such, the claim is preempted under the analysis discussed earlier.

DeLuca's final argument is that as to certain defendants, her claims are not preempted because Joseph DeLuca first smoked those defendants' cigarettes before the Labeling Act's effective date. The crucial date for preemption purposes is July 1, 1969, the effective date of the Public Health Cigarette Smoking Act's amendment that broadened the Labeling Act's preemption provision. The Supreme Court determined in *Cipollone* that before the 1969 amendment, the Labeling Act "only pre-empted state and federal rulemaking bodies from mandating particular cautionary statements" and did not preempt state common law actions for damages. *Cipollone*, 505 U.S. at 519.

With regard to Philip Morris and Lorillard, DeLuca relies on the deposition testimony of Thomas DeLuca, Joseph's son, who suggests that Joseph may have smoked Marlboro (Philip Morris) and Kent (Lorillard) cigarettes in Canada before he came to the United States in approximately 1965 or 1966. Thomas, however, was not born until 1978 and therefore has no

10

personal knowledge regarding the brands of cigarettes his father smoked before 1966. His testimony on this issue is therefore inadmissible and cannot be relied upon to survive summary judgment. Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *Whitted v. Gen. Motors Corp.*, 58 F.3d 1200, 1204 (7th Cir. 1995) (materials considered on summary judgment must be admissible).

Maria DeLuca testified that Joseph smoked Liggett & Myers' Chesterfield-brand cigarettes when she met him in 1968 and that he smoked Chesterfields from "approximately 1968 to 1973." Maria DeLuca Dep. at 30. Though this testimony is at odds with other evidence in the record, it is sufficient to create an issue of fact as to whether Joseph smoked Chesterfields before the 1969 amendment's effective date. Thus Liggett & Myers is not entitled to summary judgment on preemption grounds as to DeLuca's claims that arise from Joseph's smoking of Chesterfield-brand cigarettes before July 1, 1969. DeLuca's claims are preempted to the extent they allege failure to warn after the provision's effective date, whether based on a strict liability or negligence theory. The Court therefore grants defendants' motion for summary judgment as to those claims.

**B.     Claims Based on Unreasonable Dangerousness of Defendants' Cigarettes**

Defendants contend that DeLuca cannot establish that they manufactured and sold an unreasonably dangerous product and that for this reason they are entitled to summary judgment on her claims based on that theory. Under Illinois negligence and strict products liability law, a manufacturer has a "nondelegable duty to produce a product that is reasonably safe." *Phillips v. United States Waco Corp.*, 163 Ill. App. 3d 410, 417, 516 N.E.2d 670, 674 (1987) (citing *Coney*

11

*v. J.L.G. Indus., Inc.*, 97 Ill. 2d 104, 117, 454 N.E.2d 197, 203 (1983)).

### 1.    *Strict Liability Claims*

Illinois has adopted the strict products liability formula laid out in the Restatement

(Second) of Torts section 402A, *Suvada v. White Motor Co.*, 32 Ill. 2d 612, 210 N.E.2d 182

(1965) (overruled on other grounds), which imposes liability on "[o]ne who sells any product in a

defective condition unreasonably dangerous to the user or consumer." Restatement (Second) of

Torts § 402A(1) (1965). To prevail on a strict liability claim, a plaintiff must prove that his

injury resulted from (1) a condition of the product (2) that was unreasonably dangerous and (3)

that existed at the time the product left the defendant's control. *Todd v. Societe Bic, S.A.*, 21 F.3d

1402, 1406 (7th Cir. 1994) (citing *Suvada*, 32 Ill. 2d at 623, 210 N.E.2d at 188).

A product can be unreasonably dangerous in either of two ways – because of a design or

manufacturing defect or because of a failure to warn of a danger posed by the product "of which

the average consumer would not be aware." *Lamkin v. Towner*, 138 Ill. 2d 510, 528, 563 N.E.2d

449, 457 (1990). Conversely, "[a] nondefective product that presents a danger that the average

consumer would recognize does not give rise to strict liability." *Id.*

The plaintiff must identify a particular defect that exposed Joseph to an unreasonable risk

of harm, *West v. Deere & Co.*, 145 Ill. 2d 177, 180, 582 N.E.2d 685, 686 (1991), and prove that

such defect was the proximate cause of his injury, *Schultz v. Hennessy Indus., Inc.*, 222 Ill. App.

3d 532, 540, 584 N.E.2d 235, 241 (1991). It is unclear from the amended complaint precisely

what defect DeLuca is alleging. In her response brief, she identifies only one: cigarettes'

addictive quality. Pltf. SJ Response at 6, 10.

To determine whether a product is unreasonably dangerous, Illinois courts apply the

consumer contemplation test: a product is deemed unreasonably dangerous when it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Lamkin*, 138 Ill. 2d at 528, 563 N.E.2d at 457 (quoting Restatement (Second) of Torts § 402A, cmt. i). Under this test, a product is deemed defective or unreasonably dangerous only if it "fails to perform in a manner the ordinary consumer would expect." *Todd*, 21 F.3d at 1406-07.[1] The purpose of the consumer contemplation test is to ensure that "consumers who had their eyes open when they chose to use a potentially dangerous product cannot later blame the manufacturer for their foreseeable injuries." *Insolia*, 216 F.3d at 600.

In *Insolia*, the Seventh Circuit provided guidelines for applying the consumer contemplation test when measuring the dangers of cigarettes. "[W]hat the ordinary consumer contemplated about the dangers of smoking should be evaluated at the time the plaintiff[] began smoking." *Id.* For Joseph DeLuca, that was approximately 1946. Because of the addictive quality of cigarettes, the "ordinary consumer" is the beginning smoker because "the state of knowledge of the [ordinary] consumer must be measured before the [ordinary] person is hooked

---

[1] DeLuca argues that the Court should apply the "risk-utility test" to determine whether cigarettes are unreasonably dangerous. Under this test, a product is unreasonably dangerous if "the defendant fails to prove that on balance the benefits of the challenged design outweigh the risk of danger inherent in such designs." *Lamkin*, 138 Ill. 2d at 529, 563 N.E. 2d at 457. However, simple products that are obviously dangerous are not subject to the risk-utility analysis. *Todd*, 21 F.3d 1411 (cigarette lighter); *see Scoby v. Vulcan-Hart Corp.*, 211 Ill. App. 3d 106, 112, 569 N.E.2d 1147, 1151 (1991) (deep fryer); *id.* (emphasizing the simple mechanics of a fryer). A cigarette is little more than tobacco rolled in paper; we therefore conclude that it is a simple product and that the consumer contemplation test applies. *Cf. Kappes v. City of Chicago*, 119 Ill. App. 436, 442 (1905) (taking judicial notice that cigarettes are a "simple thing, requiring neither any considerable amount of time or skill nor any mechanical appliance or tool to make the combination of the paper and tobacco, and thus manufacture a cigarette").

13

and is no longer capable of making a rational choice." *Id.* at 599. Thus under *Insolia,* we must ask what a beginning smoker in 1946 knew about the risks associated with cigarettes.[2]

*Insolia* does not specifically address how one deals with a smoker who, like Joseph DeLuca, switched brands after he started smoking. In particular, the case does not deal with the question whether it is appropriate to determine the liability of a defendant whose cigarettes the plaintiff began smoking at a particular time by what was generally known about smoking twenty or thirty years earlier. We need not address this question, however, because DeLuca's claim fails even if we look at the time period when Joseph began smoking or, as we will see momentarily, the later time when DeLuca says Joseph became "re-addicted."

For DeLuca's strict liability claims to survive summary judgment under *Insolia* as applied here, she must produce evidence that would allow a reasonable jury to find that the ordinary, non-smoking Italian consumer in approximately 1946 was unaware of cigarettes' addictive quality. *Id.* at 600-01. To support their motion for summary judgment, defendants reference the 1964 Surgeon General's Report, which "documented the deleterious health effects of smoking in great detail," *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 144 (2000), and which reported that smoking was habit-forming though not addictive, *Insolia*, 216 F.3d at 602. It was not until after the Report's release that "Congress convened hearings to consider legislation addressing 'the tobacco problem,'" – hearings which led to the Labeling Act. *FDA*, 529 U.S. at 145. The Court believes that a trier of fact reasonably could infer that if the public health

---

[2]In *Insolia,* the Seventh Circuit was applying Wisconsin law. Because Wisconsin has also adopted the Restatement (Second) of Torts § 402A, from which the consumer contemplation test emerges, this fact does not affect our analysis. *Vincer v. Esther Williams All-Aluminum Swimming Pool Co.*, 69 Wis. 2d 326, 230 N.W.2d 794, 797 (1975).

community did not reach a consensus until 1964 that smoking was habit-forming, "surely the Average Joe could not have known in [1946] that smoking was addictive." *Id.* at 603.

Defendants suggest that to establish that their cigarettes are unreasonably dangerous, DeLuca must present evidence that a safer alternative (i.e., non-addictive) design was viable. We disagree. In *Kerns v. Engelke*, 76 Ill. 2d 154, 390 N.E.2d 859 (1979), the Illinois Supreme Court announced that a feasible design alternative was "pertinent evidence" of an unreasonably dangerous defect, *id.* at 164, 390 N.E.2d at 864, but left open the question whether a plaintiff must prove alternative design feasibility. The Illinois Appellate Court later stated that

> [i]n light of the *Kerns* decision, and until the Illinois Supreme Court determines otherwise, we believe the rule of law in Illinois is that evidence of alternative design feasibility is relevant and admissible in a design defect case, but it is not an essential element of such a case if the finder of fact can be persuaded in the absence of such evidence that the defect in design rendered the product unreasonably dangerous.

*Seward v. Griffin,* 116 Ill. App. 3d 749, 766, 452 N.E.2d 558, 571 (1983). We therefore conclude that "there is no requirement that a plaintiff must present evidence of a feasible alternative design in order to survive summary judgment." *Wortel v. Somerset Indus., Inc.*, 331 Ill. App. 3d 895, 911, 770 N.E.2d 1211, 1224 (2002).

Under the consumer contemplation test as *Insolia* has articulated it for evaluating the dangerousness of cigarettes, a reasonable jury could find that defendants' products were unreasonably dangerous and therefore defective for purposes of a strict liability analysis. However, DeLuca must also establish that the particular defect that she identified – cigarettes' addictive quality – was the proximate cause of Joseph's injury. DeLuca must thus rely on a theory that addiction is what really kills: "[t]he idea is that the first cigarettes don't cause cancer,

15

but they do make you crave more cigarettes and those additional cigarettes are the ones that cause cancer down the road." *Insolia*, 216 F.3d at 601. The question then is whether defendants' cigarettes caused Joseph's addiction.

Joseph started smoking in 1946 and had been smoking for at least twenty-two years before DeLuca can potentially establish that Joseph first smoked any of defendants' cigarettes. It is not entirely clear that DeLuca contends that it was the addictive quality of *defendants'* cigarettes that caused his addiction. Certainly that could not have been the case at any time prior to 1968. After that date, DeLuca's evidence is at best equivocal: she says that Joseph quit smoking in 1976 but after six months started again and became "re-addicted." Pltf. SJ Response at 25-26. At that time, it appears, he was smoking Marlboro (Philip Morris) cigarettes. Taking DeLuca's claim of "re-addiction" at face value – she has cited to no scientific or medical testimony supporting the contention that what Joseph underwent in 1977 was in fact a new addiction – it does not entitle her to a trial on her product liability claim against Philip Morris. For if Joseph was in fact "re-addicted" in 1977, under *Insolia* we would be required to refocus the consumer contemplation lens on 1977 and ask what a beginning smoker would have known about cigarettes' addictive propensities at that time. DeLuca has not argued, and has cited no evidence from which a reasonable jury could find, that the average consumer in 1977 did not appreciate that smoking was addictive or at least habit-forming. Because DeLuca is unable to establish an essential element of her claim on which she will bear the burden at trial, summary judgment is appropriate on her strict liability claims.

16

## 2. *Negligence Claim*

In a negligence claim, "the focus is on the fault of the defendant," as opposed to the condition of the product. *Phillips*, 163 Ill. App. 3d at 417, 516 N.E.2d at 674. A manufacturer is negligent if, because it "failed to employ the requisite degree of care," it breaches its duty to produce a reasonably safe product. *Todd*, 21 F.3d at 1412. In plaintiff's remaining negligence claim, her contention appears to be that defendants were negligent because, despite their knowledge that cigarettes are unreasonably dangerous and addictive, they nevertheless manufactured and sold this product. DeLuca has not, however, identified a particular breach of the duty of ordinary care in the manufacturing or sale process that would distinguish this claim from one of strict liability. DeLuca thus seeks to hold defendants liable for the otherwise faultless manufacture and sale of cigarettes, simply because they knew of cigarettes' dangers.

There are two problems with such a claim. First, it is far from clear that Illinois would impose negligence liability on cigarette manufacturers simply because they made and sold a legal product, albeit a harmful one, without any specific breach of ordinary care. The burden is on the plaintiff to persuade the Court why she should be allowed to proceed under a theory that would equate fault with the manufacture of a product that the legislature has not banned. DeLuca has not submitted any argument in support of recognizing liability under these circumstances, and we are unwilling to assume that Illinois courts would recognize such a tort. *Cf. Cruz Vargas v. R.J. Reynolds Tobacco Co.*, 218 F. Supp. 2d 109, 118 (D.P.R. 2002) (granting summary judgment on plaintiff's claim "based exclusively on the theory that [defendant] manufactured and sold cigarettes"); *Insolia v. Philip Morris Inc.*, 128 F. Supp. 2d 1220, 1225 (W.D. Wis. 2000) (on remand) ("[A] claim of negligence based on continued sales of a product recognized as

17

dangerous would be entirely novel.").

Second, the idea lingering behind plaintiff's negligence claim is essentially one of concealment: defendants had knowledge of cigarettes' harmful qualities yet went ahead and produced them anyway. But this would be problematic only if consumers were not privy to those harmful qualities and were therefore unable to make informed decisions about whether to use the product. DeLuca's claim thus amounts to a fraudulent concealment claim predicated on a duty to inform via the channels of marketing and promotion. As such, it is preempted by the Labeling Act, as discussed above. *Cf. Miles,* 2002 WL 31655188, at *7 (finding that plaintiffs' claims that sought "to hold [defendant] liable for putting Drano into the stream of commerce, despite the company's awareness that the containers were 'defective and unreasonably dangerous,'" were tantamount to claims of a failure to warn).

## C.    Liggett & Myers Separate Motion for Summary Judgment

Plaintiff's sole remaining claim is against defendant Liggett & Myers for pre-July 1, 1969 failure to warn. Liggett & Myers has separately moved for summary judgment on the basis that it has never manufactured, sold, or distributed cigarettes and therefore could not have been responsible for any of DeLuca's injuries. It claims that its parent company, Liggett Group, Inc., is the entity that actually engages in this conduct. DeLuca asks for leave to amend the complaint to name Liggett Group.

A plaintiff who wishes to amend a complaint to add a new party that was not timely served must comply with Federal Rule of Civil Procedure 15(c)(3). This rule provides that an amendment is permitted if (1) within 120 days of the filing of the complaint, the new party has received "such notice of the institution of the action that the party will not be prejudiced in

18

maintaining a defense on the merits" and (2) the party knew or should have known that "but for a

mistake concerning the identity of the proper party, the action would have been brought against

the party." Fed. R. Civ. Pro. 15(c)(3); *see also* Fed. R. Civ. Pro. 15(a) (stating that leave to

amend a complaint "shall be freely given when justice so requires"). We believe that these

prerequisites are satisfied in this case. There is no reason to believe that Liggett Group was not

on notice of this lawsuit or would in anyway be prejudiced by permitting DeLuca to amend the

complaint for the purposes of naming Liggett Group. Attorneys for Liggett & Myers have been

actively involved in defending this lawsuit and have made arguments in support of summary

judgment to protect Liggett Group's interests. Liggett & Myers' request for summary judgment

on this basis is therefore denied, and DeLuca is granted leave to amend the complaint as she has

requested.

## D.     Remaining claims against Liggett & Myers

Finally, we must consider whether DeLuca's pre-1969 failure to warn claims against

Liggett & Myers are barred by the applicable statute of limitations and statute of repose.

### 1.     *Failure to Warn Claim - Statute of Limitations*

The parties agree that Illinois' statute of limitations for personal injury, 735 ILCS 5/13-

202, applies to DeLuca's negligence-based failure to warn claims. A claim for personal injury

must be commenced "within 2 years next after the cause of action accrued." *Id.* To determine

when the cause of action "accrued," Illinois applies the discovery rule, which tolls the statute of

limitations until a plaintiff "knows or reasonably should know of an injury and also knows or

reasonably should know that the injury was caused by the wrongful acts of another." *Martin v. A*

*& M Insulation Co.*, 207 Ill. App. 3d 706, 710, 566 N.E.2d 375, 378 (1990) (quoting *Nolan v.*

19

*Johns-Manville Asbestos*, 85 Ill. 2d 161, 169, 421 N.E.2d 864, 868 (1981)) (internal quotation marks omitted). The limitations period begins to run when the plaintiff realizes, or should have realized, that he suffered an injury, not when he "realizes the consequences of the injury or the full extent of the injury." *Wilson v. Devonshire Realty*, 307 Ill. App. 3d 801, 806, 718 N.E.2d 700, 705 (1999). Therefore the benchmark date is not when Joseph was diagnosed with lung cancer, but rather the time at which he became aware of a smoking-related injury to his health.

For the statute to be triggered, it is not necessary for the injured party to have knowledge that a legal duty to him has been breached. *Nolan*, 85 Ill. 2d at 170-71, 421 N.E.2d at 868. For once he knows or reasonably should know that wrongful conduct caused his injury, the injured party is "under an obligation to inquire further to determine whether an actionable wrong was committed." *Id.* at 171, 421 N.E.2d at 868. When an injured party knew or reasonably should have known "becomes a question of law for the trial court to determine when only one conclusion can be drawn from the undisputed facts." *Wilson*, 307 Ill. App. 3d at 805, 718 N.E.2d at 704 (citing *Witherell v. Weimer*, 85 Ill. 2d 146, 156, 421 N.E.2d 864, 874 (1981)).

The question the Court must then ask is whether by at least November 29, 1998, two years before this suit was filed, DeLuca knew or reasonably should have known that he had an injury caused by cigarette smoking. Maria DeLuca testified that starting around twenty years ago – i.e., by the early 1980's – every morning Joseph experienced what he himself referred to as a "smoker's cough"– a "productive cough" in which he expelled sputum. Maria DeLuca Dep. at 103-05; *see also* Broecker Dep. at 188. Joseph's stepson, Frederick Broecker, testified that around 1975 Joseph told him he wanted to quit smoking because he was suffering from shortness of breath and becoming winded. Broecker Dep. at 17-19. From this evidence no reasonable jury

20

could find that Joseph's claim had accrued within the two years before he filed suit in November 2000. Liggett & Myers is therefore entitled to summary judgment on DeLuca's pre-1969, negligence-based failure to warn claim.

*2.     Product Liability Claim - Statute of Repose*

Liggett & Myers argues that DeLuca's pre-1969 product liability claim is barred by 735 ILCS 5/13-213, a statute of repose that applies to claims accruing after January 1, 1979 for personal injury based on strict product liability. The statute provides that a product liability action must be commenced within ten years of the product's sale to a consumer, unless the defendant has expressly warranted the product for a longer period. *Id.* 13-213(b). This is subject to certain extensions, including one which provides that if an injury occurs within the ten-year period following the sale of the product, the plaintiff may bring an action within two years after the date on which he knew or reasonably should have known of his injury, but in no event more than eight years after the date on which the injury occurred. *Id.* 13-213(d).

Liggett & Myers contends that section 13-213 bars DeLuca's product liability claim. DeLuca objects that in making this argument, Liggett adopted the discussion in a motion for summary judgment that had been superseded and thus did not preserve the point. But Liggett's argument is nonetheless sufficient to put the issue in play.

It is not entirely clear that DeLuca is even entitled to the benefit of section 13-213(d), as Joseph's injury may not have occurred within the ten years after his last use of Chesterfield cigarettes. As noted earlier, our determination that DeLuca's claim against Liggett & Myers (the manufacturer of Chesterfields) is not preempted is premised upon Mrs. DeLuca's testimony indicating that Joseph smoked Chesterfields from approximately 1968 through 1973. Under this

scenario, unless Joseph had experienced an injury by 1983, section 13-213(d)'s limited discovery-rule extension of the statute of repose does not even come into play, and his claim is barred by section 13-213(b) because it was not brought within ten years of his last purchase of Chesterfields.[3] *See generally Olson v. Owens-Corning Fiberglass Corp.*, 198 Ill. App. 3d 1039, 1043, 556 N.E.2d 716, 719 (1990) (section 13-213 applies to "all strict liability claims involving products," even if the disease resulting from exposure to the product has a long latency period).

Assuming for purposes of discussion, however, that DeLuca's injury did occur within the ten years following his last use of Chesterfields, his product liability claim against Liggett & Myers is time-barred for the same reasons discussed with regard to his failure to warn claim: he did not file suit within two years after he knew or reasonably should have known that he had an injury caused by cigarette smoking (the eight year period in 13-213(d) is an outer limit for application of the statute's version of the discovery rule, not a grant of permission to sue within eight years of an injury).

In arguing that section 13-213 does not bar her product liability claim, DeLuca relies on two cases that do not support her position. *Witherell v. Weimer,* 85 Ill. 2d 146, 421 N.E.2d 869 (1981), concerned a statute of limitations, not a statute of repose. The statute that governs DeLuca's product liability claims puts an outside limit on when an action can be brought, irrespective of whether the plaintiff knew or should have known by that time that he had a wrongfully caused injury. A statute of repose "gives effect to a policy different from that advanced by a period of limitations; the period of repose is intended to terminate the possibility

---

[3] DeLuca does not argue that his claim had accrued before 1979 and thus was not subject to section 13-213 in the first instance.

of liability after a defined period of time, regardless of a potential plaintiff's lack of knowledge." *Cunningham v. Huffman,* 154 Ill. 2d 398, 406, 609 N.E.2d 321, 325 (1993).

*Davis v. Toshiba Machine Co. of America,* 186 Ill. 2d 181, 710 N.E.2d 399 (1999), also cited by DeLuca, simply holds that as section 13-213's plain language indicates, if a plaintiff is injured within the ten year repose period he has two years from when he knew or should have known of the injury to file suit, even if the repose period has expired in the meantime. *Id.* at 185, 710 N.E.2d at 401.[4] As indicated earlier, even if DeLuca could show that he was injured within the ten year period following the sale of the product, this suit unquestionably was not filed within two years of his discovery of the injury. In this regard, DeLuca relies on the fact that he was not diagnosed with lung cancer until June 2000, suggesting that the two year period did not start running until that time. *See* Pltf. SJ Response at 29-30. But as we have previously ruled, the evidence indisputably demonstrates that Joseph suffered a smoking injury to his health long before that; accrual of his claim did not await the ultimate diagnosis of lung cancer.

For these reasons, the Court finds that DeLuca's pre-1969, strict liability claim against Liggett & Myers for failure to warn is barred by section 13-213.

---

[4] *Davis* did not write out of the statute the eight year outside limit on application of the discovery rule; that period was not at issue in the case.

23

**CONCLUSION**

For the reasons stated above, defendants' motions for summary judgment [Nos. 88-1, 116-1] are granted. DeLuca's motion to strike the affidavits of two defense witnesses [No. 126-1] is denied as moot because the Court did not rely on these affidavits in reaching its conclusions. All remaining motions are terminated [Nos. 106-1, 114-1, 115-1]. The Clerk is directed to enter judgment in favor of the defendants. The trial date of May 5, 2003 and the final pretrial conference date are vacated.

MATTHEW F. KENNELLY
United States District Judge

Date: April 4, 2003

24